*876 OPINION OF THE COURT
Barbara Howe, J.
This is a proceeding for judicial settlement of the final account of HSBC Bank USA (hereafter, HSBC), as corporate trustee of the testamentary trust of James S. Ely (hereafter, Ely). The testamentary trust was established by Ely in his last will and testament dated September 28, 1959, for the benefit of his son, James S. Ely, Jr. (hereafter, James, Jr.). The will named decedent’s brother, Franklin J. Ely (hereafter, Franklin), as co-trustee with the Marine Trust Company of Western New York, the predecessor to HSBC. This account covers the period from the initial funding of the trust on May 31, 1968 through September 7, 2006.
Franklin had resigned as trustee on May 5, 2000, and when he died on July 10, 2000, HSBC filed an intermediate account for its actions as trustee from the inception of the trust until July 10, 2000. That accounting was settled on releases signed by trust beneficiary James, Jr., his six children, and the executor of Franklin’s estate. The releases provide that each person
“acknowledges full compliance by HSBC Bank USA and its corporate predecessors and Franklin J. Ely, as co-trustees, with all applicable provisions of the will of James S. Ely throughout the period covered by the account . . . [and] . . . [r]eleases and discharges HSBC Bank USA, the estate of Franklin J. Ely, and Philip L. Evans, as his executor, and each of them, of and from any and all liabilities, claims, demands, actions, or causes of action whatsoever, at law or in equity, that the Beneficiary ever had, now has, or which the Beneficiary of the heirs, distributees, representatives, successors, or assigns of the beneficiary ever may have against HSBC Bank USA.”
James, Jr. died on December 21, 2004. His will was admitted to probate by the Monroe County Surrogate’s Court, and his surviving spouse, Michele T.K. Ely (hereafter, Michele), was issued letters testamentary. Pursuant to his last will and testament, James, Jr. exercised a power of appointment and directed that the remaining trust funds be paid over into a new trust for the benefit of his surviving spouse, and he named the Genesee Valley Trust Company (hereafter, Genesee Valley) as trustee.
When James, Jr. died, HSBC filed a final account of the trust for the period from July 10, 2000 to December 21, 2004. Gen *877 esee Valley executed a release on October 18, 2005, which provided that “[HSBC] has fully and satisfactorily accounted for all property held in the trust for that period [July 10, 2000 to December 21, 2004],” and by which Genesee Valley consented to “[r]elease, exonerate and discharge [HSBC], of and from any and all claims, demands, liability and accountability with respect to its actions, proceedings and transactions, as Trustee of the trust.”
Because Michele, as the executor of James, Jr.’s estate, did not give a release for HSBC’s 2004 final trust accounting, HSBC subsequently filed an amended final accounting for the period of July 10, 2000 to September 7, 2006 and petitioned in this court for judicial settlement. The parties then exchanged discovery, and HSBC further amended its final account seeking judicial approval and discharge for its actions as trustee from the inception of the trust on May 31, 1968 through September 7, 2006.
Objections to HSBC’s accounting have been filed by Michele, as executor of James, Jr.’s estate and individually as a trust beneficiary, and also by Genesee Valley (both collectively referred to hereafter as objectants). They have agreed, however, that HSBC’s account for the period prior to July 10, 2000, has been settled, even though no formal order of discharge was ever obtained previously. Furthermore, Genesee Valley has already waived any right to challenge the actions of HSBC from the period of July 10, 2000 to December 21, 2004.
Thus, what remains at issue now is Michele’s challenge to the accounting for the period from July 10, 2000 through September 7, 2006, and Genesee Valley’s challenge for the period from December 21, 2004 through September 7, 2006.
Objectants allege that HSBC violated the Prudent Investor Rule and the Prudent Investor Act under EPTL 11-2.2 (a) and 11-2.3, and they allege that HSBC imprudently and negligently managed the trust assets. Objectants urge that HSBC should be surcharged for damages to the trust resulting from its negligence. HSBC denies the allegations, and has filed a motion for summary judgment seeking dismissal of the objections on the ground that HSBC met its fiduciary obligations to the trust. Michele opposes HSBC’s motion, and has cross-moved for partial *878 summary judgment on the issue of liability with respect to her objections.[1]
I now find and decide as follows.
(A)
(i)
The Objections
Objectants filed a verified bill of particulars, dated May 18, 2010, which clarifies their specific objections to HSBC’s management of the trust.
Objectants allege that HSBC was imprudent in its conduct by its “acquisition and/or retention” of shares of the common stock of General Electric Company (hereafter, General Electric), Merck & Company, Inc. (hereafter, Merck), Microsoft Corporation (hereafter, Microsoft) and Pfizer, Inc. (hereafter, Pfizer). They contend that
“the market value of [the shares of the companies], respectively, caused the market value of all such shares held by the Trust to exceed five percent of the total market value of the assets held in the Trust, excluding the market value of the Trust’s holdings of the stock of The Soper Company and its interest in Soper LLC. The specific date or dates on which the retention of these shares became imprudent is not known to the Objectants but is believed to be prior to July 10, 2000” (emphasis added).
Overall, within the foregoing alleged claimed overweight position^) or concentration, objectants assert that HSBC failed to manage the trust properly, inter alia, by noncompliance with its own internal trust investment and management policies, as well as by breaching the prudent investor standards. What object-ants’ contentions come down to in the end is succinctly set forth in the “preliminary statement” of their May 31, 2012 “reply memorandum of law”:
“This reply memorandum of law is submitted in further support of Objectants’ cross-motion for summary judgment as to liability only and in further opposition to Petitioner’s motion for summary judgment. HSBC Bank (‘the Bank’) acted imprudently *879 in its conduct as Trustee of a Trust under the Will of James Ely [ ] (‘the Trust’) for the period of July 10, 2000, to September 7, 2006. During this period, approximately 60% of the total market value of the Trust consisted of stock in the closely held, family-owned Soper Company (‘Soper’). As a closely held, family-owned company, there was virtually no market for Soper stock, and thus, only 40% of the Trust’s assets were marketable. But despite holding nearly 60% of the Trust’s assets in unmarketable stock, the Bank invested nearly 30% of the Trust’s total assets in the stock of just four companies: Pfizer, Merck, Microsoft, and General Electric. The heightened prudence standard imposed on the Bank required further diversification of the non-Soper assets to minimize risk. The Bank’s failure to diversify the non-Soper assets was imprudent, and thus, the Bank violated it fiduciary duties causing loss to the Trust of which the Bank should be surcharged” (emphasis added).
On July 10, 2000, the trust was valued at approximately $4.6 million, with $2.7 million of the value (approximately 60% of the total trust assets) attributed to the Soper stock. The remaining 40% of the trust assets were held in 25 various stock holdings. The four stocks at issue — General Electric, Merck, Microsoft, and Pfizer — constituted approximately $1.3 million of the trust value, or approximately 70% of the 40% of the nonSoper stock.[2]
The value of the trust principal, as of September 7, 2006, as listed in the accounting, is $3,772,413.82.
(Ü)
Law
On January 1, 1995, the Prudent Investor Act (EPTL 11-2.3) became the governing standard for fiduciaries, and it imposes an affirmative duty on a fiduciary “to invest and manage property held in a fiduciary capacity in accordance with the prudent investor standard defined by this section” (EPTL 11-2.3 [a]). The standard of conduct under this role is not defined by “outcome”; rather, compliance “is determined in light of facts *880 and circumstances prevailing at the time of the decision or action of [the] trustee” (EPTL 11-2.3 [b] [1]).
The rule expressly requires that a “trustee shall exercise reasonable care, skill and caution to make and implement investment and management decisions as a prudent investor would for the entire portfolio, taking into account the purposes and terms and provisions of the governing instrument” (EPTL 11-2.3 [b] [2] [emphasis added]). When evaluating a fiduciary’s decisions, “it is not sufficient that hindsight might suggest that another course would have been more beneficial; nor does a mere error of investment judgment mandate a surcharge” (Matter of Bank of N.Y., 35 NY2d 512, 519 [1974]).
Furthermore, HSBC’s expert[3] has pointed out why “the entire portfolio” has to be taken into consideration:
“Both the statute and the Legislative Memo emanated from the Third Report of the New York EPTL/ SCPA Legislative Advisory Committee of which I was a member. That Report elaborates on why the focus must be on the entire portfolio.
“Of particular importance is the Committee discussion in the portion of the report devoted to ‘Modern Portfolio Theory,’ where the Committee states:
“ ‘According to so-called modern portfolio theory, systematic risk can not be avoided. The marketplace compensates the buyer only for systematic risk but not for specific risk. This is because specific risk can be eliminated by diversification. For example, a properly diversified portfolio of common stocks will greatly reduce specific risk associated with these securities taken individually. Indeed, the foundation of modern portfolio theory rests on the mathematically derived conclusion that a security which is itself highly volatile, when combined with one or more other securities to create a portfolio, can actually reduce overall portfolio volatility to levels below those associated with individual securities . . .
“ ‘The traditional prudent man rule may not sanction investment strategies based on modern theory. For example, the Spitzer [case] focus on each separate investment as prudent or imprudent does not sufficiently recognize that a prudence standard *881 should be applied to an entire portfolio . . .
“ ‘To summarize, the modern prudent investor assesses total portfolio return; balances the level of current income with its expected growth relative to inflation; considers the proportions allocated among various categories of assets to assure that the overall portfolio structure is appropriate for the client circumstances; weighs the tax consequences of portfolio changes and makes the trade-offs necessary to improve the portfolio’s characteristics going forward on an after-tax basis; sees the portfolio as a whole and diversifies investments to limit specific risks; assesses the acceptable risk and seeks to maximize return at that risk level; and hires professional help where needed.’ ” (Emphasis added.)
(B)
Analysis
It is undisputed, as objectants note, that the trust’s main holding was stock in a family-owned, closely held company known as “The Soper Company.” When the trust was funded in 1968, it was the understanding of the cotrustees — HSBC’s predecessor, Marine Trust Company, and Ely’s brother, Franklin— that the trust would hold an overweight position, or concentration, of stock in The Soper Company, in which the Ely family had significant ownership interests. James, Jr., the trust beneficiary did not then, and objectants do not now, urge that retention of the Soper stock was imprudent. Rather, objectants ask this court to focus solely on the remaining trust assets as if the Soper stock were not a part of the portfolio.
I reject objectants’ argument that the actions of HSBC must be examined in isolation from the Soper stock. Neither the statutes nor the case law permit a court to review a fiduciary’s actions and, in that process, ignore a critical aspect of the overall trust strategy and investment decision-making. In determining whether a trustee has met the standard of conduct required by the Prudent Investor Act, the “investment and management decisions” for “the entire portfolio” must be considered (EPTL 11-2.3 [b] [2]). The prudent investor standard requires that a trustee must consider:
“to the extent relevant to the decision or action, the size of the portfolio, the nature and estimated duration of the fiduciary relationship, the liquidity and *882 distribution requirements of the governing instrument, general economic conditions, the possible effect of inflation or deflation, the expected tax consequences of investment decisions or strategies and of distributions of income and principal, the role that each investment or course of action plays within the overall portfolio, the expected total return of the portfolio (including both income and appreciation of capital), and the needs of beneficiaries (to the extent reasonably known to the trustee) for present and future distributions authorized or required by the governing instrument” (EPTL 11-2.3 [b] [3] [B] [emphasis added]).
Objectants argue that HSBC should have diversified the stock holdings, other than Soper, because “the market value” of General Electric, Merck, Microsoft, and Pfizer, “caused the market value of all such shares held by the Trust to exceed five percent of the total market value of the assets held in the Trust.” However, the decisions related to HSBC’s acquisition and/or retention of the General Electric, Merck, Microsoft, and Pfizer stocks cannot be evaluated in a vacuum and without consideration of 60% of the trust assets (the Soper stock).
There is no blanket prohibition to retaining stocks in a concentrated manner, provided the decision to do so was made with “reasonable care, skill and caution” (EPTL 11-2.3 [b] [2]).
“Compliance with the prudent investor rule is determined in light of facts and circumstances prevailing at the time of the decision or action of a trustee. A trustee is not liable to a beneficiary to the extent that the trustee acted in substantial compliance with the prudent investor standard or in reasonable reliance on the express terms and provisions of the governing instrument” (EPTL 11-2.3 [b] [1]).
A trustee need not diversify assets if “the trustee reasonably determines that it is in the interests of the beneficiaries not to diversify, taking into account the purposes and terms and provisions of the governing instrument” (EPTL 11-2.3 [b] [3] [C] [emphasis added]). Our Court of Appeals has held that the prudent investor standard “dictates against any absolute rule that a fiduciary’s failure to diversify, in and of itself, constitutes imprudence” (Matter of Janes, 90 NY2d 41, 50 [1997]). And, the diversification provisions of the Prudent Investor Act are “generally consistent with the diversification standards already *883 developed by the courts under the prudent person rule” (Matter of Hyde, 44 AD3d 1195, 1198 [2007] [citations omitted]).
I find that HSBC complied with the prudent investor standards when it determined to retain the General Electric, Merck, Microsoft, and Pfizer stocks. The evidence establishes that these stocks were on HSBC’s list of approved stocks which could be held in its investment portfolios. The four stocks were selected to comply with trust beneficiary James, Jr.’s direction that the focus of the trust’s investments be on long-term growth rather than on current income-generating assets. This strategy was consented to by cotrustee Franklin Ely, and was reflected in the accounting settled by release from James, Jr. in the year 2000. The accounting and the evidence submitted in support of its motion also demonstrate that HSBC complied fully with its internal policies regarding acceptable equity holdings in relation to these four stocks within the entire portfolio.
The trust assets were managed by both a trust administrator and an investment manager, and the trust’s performance and investment strategy was reviewed at least annually. When funded in 1968, the trust was valued at $172,618.45, and it grew to over $3.6 million in 2006. And, the 2006 net portfolio value takes into account approximately $1.9 million paid out to James, Jr., in trust distributions, including dividends from the four stocks at issue, during his lifetime. This was hardly an underperforming portfolio.
The General Electric, Merck, Microsoft, and Pfizer stocks all did exceptionally well until the year 2001, when the record reflects that the entire market experienced an overall decline. At that time, the four stocks were reviewed, and it was determined, in light of the goal of long-term growth, that it was appropriate to retain the majority of those stock holdings because, given the overall market decline, it would not have been prudent to sell all of the stocks in a declining market. Further, the trustee also determined that, if substantial stock shares were sold, the trust would have to pay significant capital gains taxes. Even if one were to disagree with the strategy — and I express no opinion in that regard — the record demonstrates a thoughtful, well-considered evaluation by the trustee of the portfolio and the stocks it held, and the trustee came to a balanced approach to managing the assets under all the circumstances.
I find that HSBC has established its entitlement to judgment as a matter of law, and I further find that objectants have failed *884 to raise any issues of material fact that HSBC violated its fiduciary duty in any way in carrying out its management of the trust assets. (See e.g. Matter of Schnare, 191 AD2d 859, 860 [1993], lv denied 82 NY2d 653 [1993]; see also Matter of Gallagher, 81 AD3d 825 [2011], and Matter of Campione, 58 AD3d 1032 [2009].)
Accordingly, I hereby grant HSBC’s motion in its entirety, and dismiss all objections to the amended accounting, and I hereby deny objectants’ cross motion. Finally, I direct that HSBC shall file a proposed decree for judicial settlement of its account within 30 days from the date hereof.

. It appears that, with the last paper submissions, Genesee Valley has joined Michele’s cross motion (to the extent its objections permit).

. The accounting shows that on July 10, 2000 the four stocks at issue had the following values: $251,700 (General Electric); $224,625 (Merck); $381,300 (Microsoft); and $459,000 (Pfizer).

. Professor Kenneth F. Joyce, Esq., is a SUNY Distinguished Teaching Professor Emeritus, among his other credentials.